IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MIKE CASTRO, and MIGUEL CASTRO, JR.,
as Parent and Next Friend of R.C.,

    Plaintiffs,

v.    No. _____

LARRY BLEIMEYER, JOHN DAY,
JOHN DOE 1, and JOHN DOE 2,

    Defendants.

## COMPLAINT FOR THE RECOVERY OF DAMAGES CAUSED BY THE DEPRIVATION OF CIVIL RIGHTS

Plaintiffs bring this complaint for damages caused by the violation of their civil and constitutional rights. Plaintiffs file this complaint under the Federal Civil Rights Act, the Constitution of the United States and the New Mexico Tort Claims Act. In support of this complaint, Plaintiffs allege the following:

### JURISDICTION AND VENUE

1. Jurisdiction over the subject matter of this action is conferred by 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983 and 1988. Venue is proper as the acts complained of occurred exclusively within Dona Ana County, New Mexico.

### PARTIES

2. Plaintiff, Mike Castro, is an individual and resident of Dona Ana County, New Mexico.

3. Plaintiff, Miguel Castro, Jr., is the parent of R.C., both are individuals and residents of Dona Ana County, New Mexico.

4. R.C. is the child of Miguel Castro, Jr.

5. As R.C.'s father, Miguel Castro, Jr. is an appropriate representative for him in this action.

1

6. Defendant Bleimeyer is an individual who at all material times was employed by the Dona Ana County Sheriff's Office in Dona Ana County, New Mexico.

7. Defendant Bleimeyer is sued in his individual capacity only. He was acting under color of state law and within the scope of his employment at all material times.

8. Defendant Day is an individual who at all material times was employed by the Dona Ana County Sheriff's Office in Dona Ana County, New Mexico.

9. Defendant Day is sued in his individual capacity only. He was acting under color of state law and within the scope of his employment at all material times.

10. Defendant John Doe 1 is an individual who at all material times was employed by the Dona Ana County Sheriff's Office in Dona Ana County, New Mexico.

11. Defendant John Doe 1 is sued in his individual capacity only. He was acting under color of state law and within the scope of his employment at all material times.

12. Defendant John Doe 2 is an individual who at all material times was employed by the Dona Ana County Sheriff's Office in Dona Ana County, New Mexico.

13. Defendant John Doe 2 is sued in his individual capacity only. He was acting under color of state law and within the scope of his employment at all material times.

## FACTUAL BACKGROUND

14. On or about June 9, 2011, Plaintiff, Mike Castro, had decided to take his eight (8) year old grandson, Plaintiff, R.C. rabbit hunting.

15. They had obtained permission from a nearby neighbor, Steve Isaacs, to be on his property to hunt rabbits with R.C.'s BB gun.

16. On or about June 9, 2011, Plaintiff Mike Castro with his grandson drove onto Mr. Isaacs' private property.

17. Eight year old R.C. brought his toy BB gun to hunt rabbits.

18. There were no firearms inside the vehicle.

19. While Plaintiffs were diving on Mr. Isaacs' property, they were stopped by Defendant Bleimeyer.

20. Defendant Bleimeyer drove up behind Plaintiffs and turned on his emergency lights.

21. Plaintiffs immediately stopped and pulled their vehicle over to the side of the private road in response to Defendant Bleimeyer's lights.

22. Plaintiff Mike Castro, who is sixty-six years old, began to step out of his vehicle to see what Defendant Bleimeyer needed.

23. Plaintiffs had committed no traffic or criminal violations.

24. There were no arrest warrants for either Plaintiff.

25. Despite having committed no violations of the law, Defendant Bleimeyer immediately ordered Plaintiff Mike Castro to get back into his vehicle.

26. Plaintiff Mike Castro complied with this order and returned to his vehicle.

27. Defendant Bleimeyer called for other law enforcement officers to assist him.

28. Two other deputies and a sergeant with the Dona Ana County Sheriff's Office responded and arrived several minutes later.

29. Once the other law enforcement officers arrived, each Defendant took a tactical position behind their patrol vehicles, which were parked behind Plaintiff's vehicle.

30. Defendant Bleimeyer explained to the other Defendants that the passenger appeared to be a kid.

31. Defendants drew loaded firearms.

32. Defendants pointed the loaded firearms toward Plaintiffs' vehicle.

33. Defendants ordered Plaintiff Mike Castro to get out of his car.

34. Defendants ordered him to place his hands over his head and walk backwards towards the officers.

35. Plaintiff Mike Castro complied.

36. Defendants ordered him to get on his knees.

37. Plaintiff Mike Castro was patted down and placed into handcuffs.

38. From the time that he stepped out of the vehicle until the time he was being patted down, Defendants had their loaded firearms pointed at Plaintiff Mike Castro.

39. He was handcuffed behind his back.

40. He informed Defendants that due to a recent shoulder surgery having his hands restrained behind his back would be painful.

41. Defendants ignored this plea and handcuffed him behind his back anyway.

42. Plaintiff Mike Castro at all times complied with Defendants' orders and posed no threat to Defendants' safety.

43. Having his hands cuffed behind his back caused physical pain to Plaintiff Mike Castro.

44. As a result of being handcuffed behind his back, Mike Castro, suffered prolonged pain and discomfort in his shoulder.

45. Plaintiff Mike Castro informed the Defendants that the only person in the vehicle was his eight year old grandson and that he only had a BB gun.

46. After being searched and handcuffed, Plaintiff Mike Castro was placed in the back of a patrol vehicle.

47. With loaded firearms pointed at Plaintiff R.C., he was ordered to get out of the vehicle with his hands up.

48. Now alone in the car, eight year old R.C. was scared.

49. When Defendants pointed their guns at R.C. and hurt his grandfather, he was terrified that his grandfather may not have been able to take him home.

50. When he got out of the vehicle he was crying.

51. Despite seeing a small eight year old boy coming out of the vehicle, Defendants continued to yell at him to get his hands up and turn around.

52. Despite knowing that Plaintiff R.C. was a young child, Defendants continued to point their loaded firearms at him.

53. At gunpoint Defendants ordered Plaintiff R.C. to walk backwards with his hands up.

54. Terrified, R.C. walked backwards with his hands up until stopped by one of the Defendants a few feet from the patrol vehicles.

55. R.C. was patted down and interrogated.

56. The Defendant asked him what was inside the vehicle.

57. R.C. answered the question through his tears "it's just a BB gun".

58. Plaintiff R.C. was placed in the back of a patrol vehicle.

59. The door was closed, locking him inside the vehicle.

60. As a result this incident, R.C. has suffered symptoms consistent with post-traumatic stress disorder.

61. As a result of this incident, R.C. has been hyper alert and stressed when he sees a white vehicle thinking that it could be a police vehicle.

62. As a result of this incident, R.C. has had frequent nightmares where he wakes up yelling "No, Stop it. He's my grandpa."

63. While R.C. was confined and detained in one patrol vehicle, his grandfather was still handcuffed in a different vehicle.

64. Defendants approached the driver's side of the vehicle with their guns drawn.

65. They removed the BB gun from the passenger side of the vehicle and placed it on top of the car.

66. No one else was inside the vehicle.

67. Neither Plaintiff at any time posed any threat to Defendants.

68. At all times they immediately complied with the orders of Defendants.

69. Despite knowing that no crime had been committed and knowing that they had no lawful reason to have arrested and detained Plaintiffs, Defendant's continued to hold them in custody.

70. After being held for over twenty (20) minutes, Defendants released Plaintiffs from their custody.

71. Defendant Bleimeyer described this incident as a "misunderstanding".

72. No criminal charges or traffic citations were ever filed.

73. This incident was video recorded by Defendants patrol vehicle cameras.

### COUNT I: SEARCH, SEIZURE AND ARREST WITHOUT PROBABLE CAUSE

74. Plaintiffs restate each of the preceding allegations as if fully stated herein.

75. Plaintiffs have a Fourth Amendment right to be free from unreasonable searches and seizures of their person and property.

76. Defendants did not have reasonable suspicion to stop and detain Plaintiffs.

77. Defendants did not have reasonable suspicion or probable cause to conduct any search of Plaintiffs or their property.

78. Defendants did not have probable cause to arrest Plaintiffs.

79. Defendant Day was the supervisory sergeant present during the illegal detention and arrest of Plaintiffs.

80. He was aware that Plaintiffs did not violate any laws justifying the seizure, detention and search of Plaintiffs.

81. Despite this knowledge and being in a position of authority over the other law enforcement officers, Defendant Day did nothing to stop this unconstitutional conduct.

82. Defendants' actions were willful, wanton and in gross and reckless disregard of Plaintiffs rights.

83. Plaintiffs suffered damages as a result of Defendants' actions including pain, suffering and emotional distress.

## COUNT II: FOURTH AMENDMENT VIOLATION FOR EXCESSIVE FORCE

84. Plaintiffs restate each of the proceeding allegations as if fully stated herein.

85. Defendants used physical force and the threat of deadly force in seizing and detaining Plaintiffs.

86. Even if Defendants had reason to arrest or detain Plaintiffs, the use of their guns under such circumstances was objectively unreasonable.

87. Even if Defendants had reason to get the eight year old boy out of the vehicle, the continued use of guns under such circumstances was objectively unreasonable.

88. Defendants' actions were willful, wanton and in gross and reckless disregard of Plaintiffs' rights.

89. Plaintiffs suffered damages as a result of Defendants' actions including extreme fear, emotional distress, and humiliation.

## COUNT III: ASSAULT AND BATTERY UNDER
## THE NEW MEXICO STATE TORT CLAIMS ACT

90. Plaintiffs restate each of the proceeding allegations as if fully stated herein.

91. Defendants pointed loaded firearms at Plaintiffs.

92. Defendants repeatedly yelled at Plaintiffs.

93. Plaintiffs were scared.

94. Given Defendants aggressive tones and pointing loaded weapons at them, Plaintiffs were in fear of being shot or harmed.

95. Defendants had no lawful reason to point loaded firearms at Plaintiffs, a sixty-six year old grandfather and his eight year old grandson.

96. Defendants forced Plaintiff Mike Castro to his knees and placed him in handcuffs.

97. He recently had surgery on his shoulder and being handcuffed behind his back caused pain.

98. Defendants knew this would hurt Plaintiff Mike Castro but proceeded to handcuff him behind his back anyway.

99. Defendants forced Plaintiff R.C. to walk backwards with his hands raised at gun point.

100. Defendant Bleimeyer patted R.C. down and made him get into the back of the patrol vehicle.

101. Plaintiffs, at all times, complied with Defendants' orders and at no time posed a threat to Defendants.

102. All of these actions described above were intentional touchings and actions committed by Defendants.

103. These touchings were done in a rude, insolent and/or angry manner by Defendants.

104. Defendants actions were intentional and without legal justification.

105. The above described actions constitute batteries and assaults upon Plaintiffs within the meaning of Section 41-4-12 of the New Mexico Tort Claims Act.

106. Plaintiffs suffered damages as a result of Defendants' actions.

### COUNT IV: FALSE ARREST AND FALSE IMPRISONMENT UNDER THE NEW MEXICO STATE TORT CLAIMS ACT

107. Plaintiffs restate each of the proceeding allegations as if fully stated herein.

108. Defendants held or confined Plaintiffs against their will.

109. Defendants knew they lacked probable cause to arrest Plaintiffs.

110. Defendants knew they lacked lawful justification to confine Plaintiffs.

111. Despite having this knowledge, Defendants arrested and held Plaintiffs.

112. Defendants actions were intentional and without legal justification.

113. The above described actions constitute false arrest and false imprisonment upon Plaintiffs within the meaning of Section 41-4-12 of the New Mexico Tort Claims Act.

114. Plaintiffs suffered damages as a result of Defendants' actions.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all counts.

### REQUEST FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

1. Compensatory damages in an as yet undetermined amount, including damages for extreme fear, emotional distress, and humiliation.

2. Punitive damages in an as yet undetermined amount.

3. Reasonable costs and attorney's fees incurred in bringing this action.

4. Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

| COYTE LAW P.C. | LAW OFFICE OF J.B. JACKS |
|---|---|
| /s/ Matthew Coyte | /s/ Jack B. Jacks |
| MATTHEW COYTE | JACK B. JACKS |
| Attorney for Plaintiff | Attorney for Plaintiff |
| 1000 Second St. NW | 1000 Second St. NW |
| Albuquerque, NM 87102 | Albuquerque, NM 87102 |
| TEL:  (505) 244-3030 | TEL:  (505) 463-1021 |
| FAX:  (505) 244-1406 | FAX:  1(888) 503-5086 |