IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MIKE CASTRO, and MIGUEL CASTRO, JR., as Parent and Next Friend of R.C., <br><br> Plaintiffs, <br><br> vs. <br><br> LARRY BLEIMEYER, JOHN DAY, SGT. JORGE FRIAS, and LT. DAVID TESTA, <br><br> Defendants. | Case No. CIV 13-483 SWS/GBW |

**MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Defendants' motion for summary judgment based on qualified immunity (ECF No. 35).  Having considered the motion, Plaintiffs' response thereto, the record herein (including the audio/video "dashcam" recordings of the stop), and being otherwise fully advised, the Court finds the motion should be denied.

### BACKGROUND

This civil rights action arises from an investigatory detention of Plaintiff Mike Castro and his grandson, R.C. (collectively, "Plaintiffs").  Defendants were all Dona Ana County Sheriff's Deputies.  The facts for purposes of this motion are as follows:

On June 8, 2011, in Las Cruces, New Mexico, Plaintiff Mike Castro took his grandson, R.C., to a nearby neighbor's property to "hunt" rabbits with a BB gun. Mr. Castro was 66 years old at the time and R.C. was eight years old. Just past 8:00 p.m. that evening, Mr. Castro and R.C. were driving in Mr. Castro's vehicle down a dirt road on the neighbor's land. For disputed reasons, Defendant Deputy Bleimeyer[1] pulled behind them and initiated a traffic stop. After stopping, Mr. Castro attempted to exit his vehicle to speak with Deputy Bleimeyer and provide his vehicle paperwork. Deputy Bleimeyer instructed Mr. Castro to get back in his vehicle and wait for directions. Several minutes later, Defendants Day, Frias, and Testa arrived on scene as backup for Deputy Bleimeyer. Defendants took covered positions behind the doors of their vehicles and drew their service weapons. Mr. Castro was then ordered out of the car, instructed to walk backwards towards the officers with his hands raised, and then to get on his knees. He was handcuffed and locked in the back of a patrol unit.

      Defendants then regained positions of cover and ordered R.C. to get out of the vehicle and walk backwards toward them with his arms raised. Once R.C. began doing so, Deputy Bleimeyer left his cover position to escort R.C. to the patrol cars. R.C. was crying and told him he had been shooting his BB gun. Deputy Bleimeyer locked R.C. in the back of a patrol unit (which was separate from his grandfather). Defendants then

---

[1] Some or all Defendants hold different positions or ranks now. The Court refers to Defendants according to their positions at the time of these events.

"cleared" Mr. Castro's vehicle by checking for additional occupants. There were none, but they did find R.C.'s BB gun.

Defendants then let R.C. and Mr. Castro out of the patrol cars, and uncuffed Mr. Castro. Defendants spoke with Plaintiffs about gun safety for a few minutes, and the encounter ended shortly thereafter, with Mr. Castro and R.C. leaving freely. No citations were issued.

Plaintiffs filed this civil rights suit for false arrest and excessive force. Defendants moved for summary judgment, claiming qualified immunity bars Plaintiff's claims.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In considering the motion, the Court must view the record and all reasonable inferences that might be drawn from it in the light most favorable to the party opposing summary judgment. *Dahl v. Charles F. Dahl, M.D., P.C. Defined Ben. Pension Trust*, --- F.3d ---, 2014 WL 643017, at *4 (10th Cir. 2014).

Specific to this case, when a defendant seeks summary judgment based on qualified immunity, the burden shifts to the plaintiff to show: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (quotation omitted). The Court may address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Though the burden shifts to the plaintiff regarding qualified immunity, the Court continues to construe the record and all reasonable inferences in the light most favorable to the plaintiff as the nonmoving party. *Becker*, 709 F.3d at 1022.

## DISCUSSION

The parties agree the controlling question regarding qualified immunity in this case is whether Defendants lawfully seized Plaintiffs when they were driving down the dirt road. (ECF No. 35 at p. 16; ECF No. 43 at p. 13.)

### A. Prong Two: Clearly-Established Constitutional Right

Looking at the second prong of qualified immunity, the parties do not dispute the constitutional right at issue (the right to be free from unreasonable seizures) is clearly established. The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated …." A traffic stop is an investigatory detention, and the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968),

govern the Court's determination as to the reasonableness of the seizure. *United States v. McGehee*, 672 F.3d 860, 866 (10th Cir. 2012).

> Under the Fourth Amendment, the determination of whether an investigatory detention is constitutional entails a two-step analysis: the detention "is reasonable if it is (1) 'justified at its inception' and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'"

*Id.* at 867 (quoting *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009)).

As to the first step of the *Terry* analysis, an officer may constitutionally "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Neff*, 681 F.3d 1134, 1137–38 (10th Cir. 2012) (quoting *Terry*, 392 U.S. at 30). "Reasonable suspicion" refers to "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). To possess the "reasonable suspicion" necessary to justify an investigatory detention, the officer must have more than "[i]nchoate suspicions and unparticularized hunches." *United States v. Simpson*, 609 F.3d 1140, 1147 (10th Cir. 2010) (quotations omitted).

With regard to the second step of the *Terry* analysis, "[t]here is no bright-line rule to determine whether the scope of police conduct was reasonably related to the goals of

the stop; rather our evaluation is guided by common sense and ordinary human experience." *United States v. Fonseca*, --- F.3d ---, 2014 WL 903473, at *5 (10th Cir. 2014) (quoting *United States v. Albert*, 579 F.3d 1188, 1193 (10th Cir. 2009)).

### B.     Prong One:  Violation of that Clearly-Established Constitutional Right

Turning now to the first prong of qualified immunity, the Court finds a genuine dispute of material fact exists concerning whether the investigatory detention was justified at its inception.  In his affidavit, Deputy Bleimeyer asserted he stopped Plaintiffs because he observed "what appeared to be the barrel of a rifle sticking out of the front passenger's window" and felt it imperative to investigate.  (Bleimeyer Aff. ¶¶ 4, 6, ECF No. 35-1 at p. 2.)  In contrast, Mr. Castro contends in his affidavit, "At no time on June 8, 2011, while we were driving to Mr. Isaac's property or while we were on Mr. Isaac's property, was the toy BB gun pointing outside of my vehicle."  (Castro Aff. ¶ 6, ECF No. 43-3.)  This material fact is in dispute and it makes the difference regarding whether Deputy Bleimeyer had reasonable suspicion to lawfully stop Mr. Castro's vehicle.[2]  Consequently, the Court cannot say at this time that Defendants did not violate Plaintiffs' Fourth Amendment rights when Deputy Bleimeyer stopped Plaintiffs' vehicle for an investigatory detention.

---

[2] The parties disagree on a couple of other issues surrounding the stop, including whether the area had seen gang activity in the recent past.  (*Compare* ECF No. 35 at p. 17 *with* ECF No. 43 at 15.)  The Court finds this and other minor disputes to be immaterial because they do not control the reasonable suspicion determination.

Moreover, the Court has reviewed the two "dashcam" audio/video recordings supplied by Defendants in support of their motion.  (Exhibits E and F, *see* ECF No. 36.)  The videos, however, do not answer the genuine dispute one way or the other.  Deputy Bleimeyer's dashcam only displays toward the front of his patrol car, but he first saw the Plaintiff's vehicle while looking left out his driver's side window.  Therefore, his dashcam does not display Mr. Castro's vehicle until Deputy Bleimeyer turned onto the dirt road and pulled behind Plaintiffs, which was after he allegedly saw the suspected firearm pointed out the window.  Sgt. Frias arrived several minutes after the stop, so his dashcam does not display anything relevant to the initial stop.  The videos are of no assistance in resolving whether Deputy Bleimeyer saw a suspected firearm pointed out he passenger window and possessed reasonable suspicion to stop Mr. Castro's vehicle.

Additionally, the Court finds a genuine dispute of material fact exists regarding whether Defendants' exercised excessive force.  In his affidavit, Mr. Castro asserts Defendant Sgt. Jon Day struck him twice in the head and neck before placing him in a patrol car.  (Castro Aff. ¶¶ 41-44, ECF No. 43-3 at p. 4.)  Sgt. Day denies striking Mr. Castro and contends he was not involved in placing Mr. Castro into a patrol vehicle.  (Day Aff. ¶¶ 8, 24, ECF No. 35-2 at pp. 5-6.)  The dashcam videos support Sgt. Day's assertions, but they do not capture Mr. Castro being placed into the patrol vehicle.  Giving Plaintiffs the reasonable inferences due, a different officer could have struck Mr.

Castro and he simply confused their identities. Further, if the officers aimed their firearms at Plaintiffs while forcing them out of the vehicle, such conduct may arguably support an excessive force claim. *See Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001); *but see Henry v. Storey*, 658 F.3d 1235 (10th Cir. 2011).

Finally, the Court finds a genuine dispute of material fact regarding whether Defendants arrested Plaintiffs and, if so, whether such arrest was supported by the necessary legal justification. *See Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009) ("The use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest."). Defendants rely heavily on the assertion that they conducted this seizure in conformity with their training for "high-risk stops" and it did not amount to an arrest. (*See, e.g.*, Bleimeyer Aff. ¶ 8; Day Aff. ¶ 12, Frias Aff. ¶ 9, Testa Aff. ¶ 11.) The Court notes, though, that local training and standard operating procedures (SOPs) are irrelevant to the question of whether officers acted reasonably under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 815 (1996); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1221-22 (10th Cir. 2005); *Tanberg v. Sholtis*, 401 F.3d 1151, 1163-64 (10th Cir. 2005). Even if Defendants followed their training perfectly, a jury could still determine they violated Plaintiffs' constitutional rights. And an arrest in violation of the Fourth Amendment could support a claim of false arrest.

## CONCLUSION AND ORDER

Multiple genuine disputes of material fact preclude summary judgment in Defendants' favor based on qualified immunity. Thus, summary judgment under Federal Rule of Civil Procedure 56(a) is inappropriate.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment based on qualified immunity (ECF No. 35) is hereby **DENIED**.

**DATED** this 7th day of April, 2014.

Scott W. Skavdahl
United States District Court Judge